## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ROYCE W. COOK,**

     **Petitioner,**

**v.**                        **Case No. 8:19-cv-757-VMC-SPF**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**

_____/

### ORDER

This cause is before the Court on Petitioner Royce W. Cook's timely *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response (Doc. 5) and Cook filed a reply (Doc. 8). Upon consideration, the Court **ORDERS** that Cook's petition is **DENIED**.

### PROCEDURAL HISTORY

Cook was charged with two counts of capital sexual battery and four counts of sexual battery. (Doc. 5-2 Ex. 3). He entered a negotiated plea whereby he agreed to plead guilty to two counts of attempted capital sexual battery and four counts of sexual battery in exchange for an overall 25-year sentence. (Doc. 5-2 Ex. 9, Ex. 10, Ex. 11 pp. 347-48). Cook did not appeal the convictions and sentences.

Cook filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 5-2 Ex. 12). The state court struck his motion with

1

leave to amend. (Doc. 5-2 Ex. 13). Cook filed an amended Rule 3.850 motion through counsel. (Doc. 5-2 Ex. 14). After obtaining a response from the State, the state court summarily denied the amended motion. (Doc. 5-2 Exs. 15, 16, 17). The state appellate court *per curiam* affirmed the denial of relief. (Doc. 5-2 Ex. 21).

## STANDARDS OF REVIEW

### I.    The AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme]

2

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.     Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Cook must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Cook must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because he entered a plea, Cook "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review

"gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the

conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). In recognizing a narrow exception to the rule that an attorney's error in a postconviction proceeding does not constitute cause for a procedural default, the Supreme Court has held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

To establish cause under *Martinez*, a petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.* at 14. A claim that does not have any merit or that is wholly without factual support is not substantial. *See id.* at 15-16.

## DISCUSSION

### I.  Introduction: Cook's Plea

Cook entered a negotiated guilty plea. The following occurred at the change of plea hearing:

6

COUNSEL: [ ] Mr. Cook is now present, Your Honor, before the Court standing on my right.

. . .

THE COURT: And what's the deal, [State]?

[STATE]: Judge, the State would be allowing the defendant to plea to adjudication, 25 years Department of Corrections.

THE COURT: Okay. Adjudication, 25 years DOC.

. . .

THE COURT: All right.

Mr. Cook, raise your right hand.

(Defendant sworn.)

THE COURT: Thank you, sir. What's your full name?

THE DEFENDANT: Royce Wayne Cook.

THE COURT: How old are you?

THE DEFENDANT: Fifty-two.

THE COURT: How far did you go in school, sir?

THE DEFENDANT: Sixteen years.

THE COURT: You can read and write, sir?

THE DEFENDANT: Yes.

THE COURT: Did you read over and understand all the rights outlined in the plea form?

THE DEFENDANT: Yes, I did.

THE COURT: Did you discuss it with [counsel]?

THE DEFENDANT: Yes, I did.

THE COURT: Do you understand all the rights in that form and that you are giving them up if you sign it and enter a guilty plea?

THE DEFENDANT: Yes, I do.

THE COURT: Is that what you would like to do?

THE DEFENDANT: At this time, yes.

THE COURT: All right. Are you under the influence of alcohol, drugs, or medication of any kind?

THE DEFENDANT: No.

THE COURT: Are you satisfied with [counsel's] performance?

THE DEFENDANT: Yes.

THE COURT: Do you understand if you are not a United States citizen that you would be deported?

THE DEFENDANT: Yes.

THE COURT: That the maximum possible penalty is what? One hundred and eighty years?

[STATE]: Yes, ma'am.

THE COURT: So if you didn't enter a plea, there would have been the two capital sexual batteries which were each life with a minimum mandatory 25, right?

[COUNSEL]: Yes, ma'am.

THE DEFENDANT: Yes.

THE COURT: Okay. But because you worked out this deal with the State, those two became first-degree felonies where they're agreeing to the 25 years and there's no minimum mandatory. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You understand that prior to your release from prison, you would be screened for involuntary civil commitment under the Jimmy Ryce Act?

THE DEFENDANT: Yes.

THE COURT: [Counsel], having reviewed discovery with your client, are you or he aware of any physical evidence disclosed by the State for which DNA testing would exonerate the defendant?

[COUNSEL]: No, ma'am.

THE COURT: [State], are you?

[STATE]: No, Judge.

THE COURT: Mr. Cook, you understand you'd be giving up all your rights to a jury trial?

THE DEFENDANT: Yes.

THE COURT: Which is scheduled for tomorrow and I'm ready to let you have your trial. Do you understand?

THE DEFENDANT: Yes, I am.

THE COURT: You'd be giving up your right to testify yourself or choose to remain silent.

THE DEFENDANT: Yes.

THE COURT: You understand?

THE DEFENDANT: Uh-huh.

THE COURT: You'd be giving up your right to subpoena witnesses to testify for you and cross-examine witnesses against you. Do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: You're giving up your right to require the State to prove the charges beyond a reasonable doubt. Do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And do you understand at the end of this, I'm going to tell you you have 30 days to appeal but as a practical matter, by entering a lawful plea to a legal sentence, there is no basis for an appeal. Do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. So this'll be the end of it except for doing your time and paying your money when you get out. Do you understand?

THE DEFENDANT: Yes.

. . .

THE COURT: Okay. Has anybody threatened or forced you or made you enter this plea?

THE DEFENDANT: No.

THE COURT: Has anyone promised you anything in order to get you to enter this plea?

THE DEFENDANT: No.

. . .

THE COURT: Okay.

And you understand that you will be found to be a sex predator. I'll sign a piece of paper about that now, and for the rest of your life, you're going to need to report as a sex predator and follow all the rules under the law about being a sex predator. You understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. And in the time that I've been a judge, those laws have changed and changed and changed and they get more strict. And the rule is you're responsible for knowing what the requirements are and following them. Okay?

THE DEFENDANT: Uh-huh.

THE COURT: All right.

I'll accept your guilty plea and you did sign the form. I find it to be free and voluntary. You're alert and intelligent, represented by able trial counsel with whom you've expressed your satisfaction.

I'll find there's a sufficient factual basis for the plea, that you understand your rights and the consequences of pleading.

I will adjudicate you on all six counts, sentence you to the negotiated disposition of 25 years on each count, concurrent one with the other. . . . No contact with the victim. And I am finding you to be a sex predator[.]

(Doc. 5-2, Ex. 11, pp. 348, 350-58).

The record supports the conclusion that Cook knowingly and voluntarily entered his plea. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

When he entered his guilty plea, Cook stated that he understood the plea deal as negotiated with the State, that the State was reducing counts one and two to attempted capital sexual battery, and that he would serve 25 years in prison. He also stated that he understood the maximum possible sentence if he had been convicted as

charged and the rights he was giving up. He further told the court that he was not forced or threatened, that he was satisfied with his attorney, that no one promised him anything to get him to enter the plea, and that he understood the change of plea form that he signed. Cook's statements at the change of plea hearing are presumed to be true. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at a [change of plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."). The record reflects that Cook's plea was knowing and voluntary.

## II.   Ground One

Cook argues that trial counsel was ineffective in not moving to suppress his statement to police on the bases that (1) the police illegally entered his home and (2) he was subject to custodial interrogation without the benefit of warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Court finds that Cook waived this claim when he entered his plea. Since a guilty plea waives non-jurisdictional defects, a petitioner who enters a plea can only challenge the knowing and voluntary nature of the plea. Entry of a plea, therefore, precludes most challenges to the conviction. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that, after a criminal defendant enters a guilty plea, he "may not thereafter raise independent claims relating to the deprivation of constitutional rights

12

that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" the range of competence for criminal attorneys); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

This claim is waived by the entry of Cook's plea, as Cook does not clearly assert that counsel's alleged ineffective assistance rendered his plea involuntary. Even if this claim of ineffective assistance can be interpreted as invoking the voluntariness of Cook's plea, however, it does not entitle him to federal habeas relief.

The victim was the daughter of Cook's fiancée. Cook made incriminating statements, in which he admitted to sexual contact with the victim, when he spoke to police in the home he shared with the victim's mother. Cook contends that counsel should have moved to suppress the statements because officers illegally entered his home and obtained the statements while he was in custody without *Miranda* warnings. The state court rejected Cook's ineffective assistance claim:

> Defendant claims that counsel should have filed a motion to suppress his statements to law enforcement because they were obtained as a result of an illegal entry into his home. Additionally, he claims that counsel

13

should have filed a motion to suppress his statements because at the time he gave his statements, he was in custody for purposes of <u>Miranda</u> because a reasonable person in his situation would not have been free to leave. In order to establish a claim for ineffective assistance of counsel based on the failure to file a motion to suppress, a defendant must demonstrate that counsel knew a valid basis existed to suppress the relevant evidence, yet failed to do so. <u>See</u> <u>Harrison v. State</u>, 562 So.2d 827, 827-28 (Fla. 2d DCA 1990); <u>see also</u> <u>Zakrzewski v. State</u>, 866 So.2d 688, 694 (Fla. 2003) ("[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious.") (internal citation omitted).

Defendant alleges that Officers Fey and Lesh[ic]k entered his home without consent and without a warrant, and proceeded to interrogate him. He alleges that they sat him down at his dining room table, removed his cell phone from his person and placed it out of his reach, then positioned themselves in a manner that was intimidating and confining, thus equating to a custodial interrogation and requiring a reading of his <u>Miranda</u> rights. However, he contends that no <u>Miranda</u> warnings were provided to him at the time of the complained of interrogation.

Defendant alleges that he maintained his innocence with the officers until they threatened to have his children removed from the home and placed into foster care. He alleges that this threat produced a false confession, which his counsel should have moved to suppress. Defendant contends that had counsel filed a motion to suppress his statements based on both the unlawful entry of the officers into his home and based on his custodial interrogation prior to providing him <u>Miranda</u> warnings, he would have prevailed, and would have thus proceeded to trial rather than enter a plea. The State was directed to respond to this claim.

In its response, the State contends that counsel in fact researched this issue and decided against filing a motion to suppress. The State further contends that a motion to suppress would not have been successful. More specifically, the State asserts that presuming that the officers would testify consistent with their report, there was no unlawful intrusion nor was there a custodial interrogation in the home. The State alleges that based

14

on the officers' report, [the victim's mother][1] left the front door open when she and the officers arrived at her shared residence with Defendant. The State alleges that through the open door, the officers heard both [the victim's mother] and Defendant invite them into their home. The State further alleges that Defendant was asked to remove his cell phone from his person because it looked like a firearm. Additionally, the State alleges that Defendant and Officer Leshick sat at the dining room table; and, Officer Fey had to stand because there was no more room at the table. The State contends that Defendant then voluntarily engaged in conversation with the officers about the victim, and not about the allegations. The State further contends that Defendant volunteered information about the victim's past allegations against other individuals. According to the State, Defendant continued to answer the officers' questions even as they got into the allegations. The State alleges that Defendant eventually confessed to having sexual intercourse with the victim. At that point, the State alleges that Defendant was placed under arrest, transported to the Pinellas Park Police Department, placed in an interview room and Mirandized. The State alleges that after Defendant was read his Miranda warnings, he invoked his right to counsel, and so the interview was terminated.

Defendant's claim is without merit. Initially, the Court notes that counsel did in fact research whether or not a motion to suppress was proper. Next, the Court agrees with the State that there was no unlawful intrusion into Defendant's home. Assuming the officers would have testified consistent with their report, they were invited into the home by both [the victim's mother] and Defendant. Therefore, Defendant consented to the entry of Officers Fey and Leshick into his home and a motion to suppress on this ground would have been without merit.

Next, under Miranda, statements made to the police in the court of a "custodial interrogation" must be suppressed if the police have not informed the suspect of his constitutional rights prior to the interrogation. See State v. Martissa, 18 So.3d 49, 51 (Fla. 2d DCA 2009). As to Defendant's claim that his statements would have been suppressed because they were made during a custodial interrogation without the benefit of Miranda warnings, the Court finds that Defendant has not

---

[1] The state court order used the name of the victim's mother and several other individuals. It is not clear whether those other individuals were minors. The Court uses initials or other descriptors to identify persons who might have been minors or whose names might readily reveal the identity of the minor victim.

demonstrated that he was "in custody" for the purposes of <u>Miranda</u> at the time he made the statements in question.

An individual is entitled to the protections o[f] <u>Miranda</u> when he or she becomes "subjected to restraints comparable to those associated with a formal arrest." <u>Martissa</u>, 18 So.3d at 51 (internal citations omitted); <u>see Ross v. State</u>, 45 So.3d 403, 415 (Fla. 2010), <u>as revised on denial of rh'g</u> (Sept. 8, 2010) ("For <u>Miranda</u> purposes, custodial interrogation means 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"). This question "is viewed from the perspective of how a reasonable person in the suspect's position would understand the situation." <u>Martissa</u>, 18 So.3d at 51-52. In determining whether a suspect is in custody, Florida courts consider: (1) the manner in which the police have summoned the suspect for questioning; (2) the purposes, place, and manner of the interrogation; (3) the extent to which the suspect was confronted with evidence of guilt; and (4) whether the suspect was informed of a right to leave the place of questioning. <u>Hewitt v. State</u>, 920 So.2d 802, 804 (Fla. 5th DCA 2006) (citing <u>Ramirez v. State</u>, 739 So.2d 568 (Fla. 1999)). The inquiry must focus on whether a reasonable person in the same position as the defendant would believe that his or her freedom of action was curtailed to a degree consistent with actual arrest. <u>State v. C.F.</u>, 798 So.2d 751, 754 (Fla. 4th DCA 2001) (quoting <u>Mansfield v. State</u>, 758 So.2d 636, 644 (Fla. 2000)).

Here, police were brought to Defendant's home by [the victim's mother], his live-in girlfriend and mother of his child, and were invited into his own home by *both* Defendant and [the victim's mother]. Although Defendant alleges that his movement was restricted, the Court finds that he was free to move about his house or to otherwise revoke his consent given to the officers to be inside of his home. The incident report indicates that one of the officers sat at the table with Defendant and the other officer had to stand nearby because there was no more room at the table. The incident report further indicates that when the officers asked Defendant what the bulge on his hip was, Defendant lifted up his own shirt and removed his cell phone attached to his belt, placing it on the table he would sit at. Notably, Defendant was not placed in restraints. Therefore, the Court finds that there was no restraint on Defendant's freedom of movement of the degree associated with a formal arrest.

Additionally, although their purpose was to investigate the allegations just made by the victim against Defendant, the incident report indicates that the Defendant was the one who did most of the talking. The incident

16

report further indicates that at first, Defendant seemed to chalk the allegations up to the victim's childishness in being unhappy with his parenting decisions. Finally, the incident report indicates that Defendant was merely asked what he thought of the allegations that the victim had just made, but was not confronted with any other evidence of guilt. Therefore, the Court finds that the incident report reflects that the officers were merely investigating the allegations made by the victim to determine if probable cause existed for an arrest. See <u>Miranda</u>, 384 U.S. at 477, 86 S.Ct. 1602 ("General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."). For the aforementioned reasons, the Court finds that a reasonable person in Defendant's position would not have believed that his or her freedom of action was curtailed to a degree consistent with an actual arrest. Accordingly, counsel was not deficient for failing to file a meritless motion and this claim is therefore denied. See <u>Ferrell</u>, 29 So.3d at 976 (Fla. 2010) (stating that counsel "cannot be deemed ineffective for failing to raise a meritless argument.").

(Doc. 5-2, Ex. 17, pp. 406-09) (state court's record citations and footnote omitted) (emphasis in original).

Cook does not show that the state court unreasonably rejected his claim. As the state court indicated, counsel stated in an email that he researched the question of whether Cook's statement was subject to suppression. (Doc. 5-2, Ex. 7).[2] Furthermore, the state court accurately recounted the statements contained in the police report. (Doc. 5-2, Ex. 16, pp. 382-35). Considering those statements, the state court

---

[2] In his reply, Cook contends that the state court erred in finding that the email shows counsel made a decision not to file the motion because there was no legal basis to do so. Counsel's email stated, "I spent approximately 6 hours yesterday researching whether Mr. Cook's statement or [redacted] statement may be subject to suppression." (Doc. 5-2, Ex. 7). The state court simply found that the email showed counsel "did in fact research whether or not a motion to suppress was proper." (Doc. 5-2, Ex. 17, p. 407). The state court's order does not find that the email showed any further decisions by counsel. Cook has not shown that the state court made a factual error regarding the email or that the state court's decision was "based on" an unreasonable factual determination. *See* 28 U.S.C. § 2254(d)(2).

reasonably concluded that counsel was not ineffective in forgoing a motion to suppress because the motion would have had little chance of success. Evidence before counsel indicated that both Cook and the victim's mother consented to the officers' entry into their home. Such an entry does not violate the Constitution. *See United States v. Johnson*, 608 F. App'x 764, 767 (11th Cir. 2015) ("[A] warrantless search or entry 'does not violate the Fourth Amendment where there is voluntary consent given by a person with authority.'" (quoting *Bates v. Harvey*, 518 F.3d 1233, 1243 (11th Cir. 2008)).

In addition, evidence available to counsel showed that *Miranda* warnings were not required because Cook was not subjected to custodial interrogation or its equivalent. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) ("We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody'"); *United States v. Partin*, 634 F. App'x 740, 746 (11th Cir. 2015) ("Miranda warnings are required only when a defendant is 'in custody,' meaning that there has been either a formal arrest or a restraint on the defendant's freedom of movement that is of the degree associated with a formal arrest.").

*United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) explains:

Whether Brown was in custody prior to his formal arrest "depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." [*United States v.*] *McDowell*, 250 F.3d [1354,] 1362 [(11th Cir. 2001)] (quotation marks and alterations omitted).

"The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996). "[U]nder the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable *innocent* person." *Id*. (emphasis added).

In addition to determining "whether an individual's freedom of movement was curtailed," a court must also consider whether the circumstances of the interview "present[ ] the same inherently coercive pressures as the type of station house questioning in *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012).

Here, the discussion took place at Cook's home, and Cook was not physically restrained. There is no indication of any show of force, coercion, or threats by the officers. Accordingly, the record supports the state court's conclusion that "a reasonable person in Defendant's position would not have believed that his . . . freedom of action was curtailed to a degree consistent with an actual arrest," and thus no basis existed for counsel to move to suppress Cook's statements. (Doc. 5-2, Ex. 17, p. 409).

Cook argues that the state court should not have relied on the police report in assessing counsel's performance because the report contradicted what Cook told counsel. Cook fails to show that the state court unreasonably evaluated counsel's choice given the information in the police report. As the state court found, it would not have been unreasonable for counsel to believe that the officers likely would have testified consistent with their report at a suppression hearing and that in light of such testimony, a motion to suppress would have failed. Thus, the state court reasonably

found that counsel did not perform deficiently in forgoing a suppression motion when counsel reasonably could have concluded that the motion would have little chance of success. Accordingly, Cook fails to establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

Finally, in his reply, Cook contends that the state court erred in not conducting an evidentiary hearing on this claim. This allegation is not cognizable on federal habeas review because it presents no challenge to the validity of Cook's conviction. *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself— and thus habeas relief is not an appropriate remedy."); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's judgment and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.") (citation omitted). Accordingly, Cook is not entitled to relief on Ground One.

## III.   Ground Two

Cook contends that his trial counsel was ineffective in failing to interview and investigate four potential witnesses for a trial.[3] The Court finds that this claim is

---

[3] Respondent notes that Cook's claim is worded slightly differently than the claim he presented in state court. In the federal petition, Cook asserts that counsel failed to "prepare" witnesses. (Doc. 1, p. 10). In his state postconviction motion, Cook argued that counsel was ineffective in failing to "interview" and "investigate" witnesses. (Doc. 5-2, Ex. 14, pp. 203, 209, 212, 214). Respondent therefore questions whether Cook exhausted the claim. In his reply, Cook asserts that Respondent's concern is "an attempt at word play." (Doc. 8, p. 4). Upon review of the postconviction motion and the habeas petition, the Court interprets Cook's federal habeas claim as alleging counsel's failure to "interview" and "investigate" the

waived by Cook's guilty plea because he has not stated that the alleged instances of ineffective assistance rendered his plea involuntary. *Tollett*, 411 U.S. at 267. Even if the claim can be construed as involving the voluntary nature of the plea, however, Cook is not entitled to relief.

Cook claims that but for counsel's deficient performance, he would have refused the State's offer and proceeded to trial, where the witness's testimonies would have "corroborated the fact that [the victim] was lying, had a motive to lie, and Petitioner only gave a false confession because the police intimidated and threatened him." (Doc. 1, p. 14). Cook further claims that counsel said he had failed in preparing a defense but "would admit at a postconviction evidentiary hearing that he was ineffective." (*Id.*, p. 12).

### A.    The Victim's Mother/Cook's Fiancée

Cook contends that the victim's mother, his fiancée, could have testified that the victim previously made false accusations against the victim's father and cousin and could have provided the names of two other potential witnesses.

The state court denied Cook's ineffective assistance claim:

> Defendant claims that counsel should have contacted . . . the victim's mother. Defendant claims that had counsel interviewed [the victim's mother] and investigated the information she had, counsel would have discovered the victim's proclivity to fabricate allegations of sexual misconduct. Specifically, Defendant alleges that [the victim's mother]

---

witnesses, as he alleged in his postconviction motion. *See, e.g.*, *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (stating that although a petitioner must "present[ ] his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation" but need not make a "verbatim restatement of the claims brought in state court[.]") (internal quotation marks and citation omitted).

would have informed counsel that the victim had previously made similar allegations against both her biological father and her cousin, which were meritless. Defendant further alleges that [the victim's mother] would have provided counsel with the names and contact information of two additional witnesses, namely [K.T.] and [T.E.], who had exculpatory information regarding the allegations against Defendant. He states that he advised counsel of [the victim's mother], the information that she had, and that she was available to testify. He further states that had counsel interviewed [the victim's mother], he would not have entered a plea but would have instead proceeded to trial. The State was directed to respond to this claim.

In its response, the State contends that [the victim's mother] was a State witness and therefore would have been available at trial for either cross-examination or to testify as a defense witness. The State further contends that despite Defendant's argument otherwise, [the victim's mother] would not have been allowed to testify that the victim had previously falsely accused other family members of sexual abuse. The State relies on the Florida Supreme Court decision in Pantoja v. State in support of its argument that impeachment evidence such as this is not allowed under sections 90.610, 90.608(a), or 90.405(2) of the Florida Statutes, and neither does the prohibition of such evidence violate a defendant's right to confront a witness against him. 59 So.3d 1092 (Fla. 2011). As to Defendant's allegation that [the victim's mother] would have also testified to the victim's statement, "I grew up without my daddy, [Cook's biological daughter] can too," the State contends that this would be inadmissible hearsay that does not fall within any exception. Lastly, the State contends that counsel did speak with [the victim's mother] because counsel did learn about potential witness [K.T.] and in fact listed him as a witness.

The Court finds the State's argument as to Claim one to be an accurate interpretation of the law on the issues presented. Although Defendant claims that had his counsel investigated [the victim's mother], counsel would have discovered that the victim had made prior false accusations of sexual abuse, Defendant also concedes in his motion that his counsel was aware that the victim had made such accusations. Thus, counsel cannot be deemed ineffective for failing to discover something of which counsel was already aware. Moreover, evidence of such prior false allegations would not have been admissible at trial to show that the victim fabricated the charges against Defendant. More specifically, Defendant concedes in his motion that the victim's prior accusations were meritless; and, section 90.610 does not permit the impeachment of

22

a witness with evidence of a prior accusation that did not result in a criminal conviction. See Pantoja, 59 So. 3d at 1096-97. Additionally, the Supreme Court of Florida concluded that evidence of a victim's prior false accusations is not admissible under section 90.608(2) where the past allegations were not against the defendant, the manner of abuse was different, and the past allegations indicated no motive to lie because no one believed or acted on the past allegations. Pantoja, 59 So. 3d at 1097.

Here, Defendant concedes in his motion that the prior false accusations were against the victim's biological father and cousin and were thus not prior accusations against Defendant. He further concedes that the prior accusations were without any merit, thus belying a motive to lie about the allegations against Defendant. See Pantoja, 59 So. 3d at 1097 ("An investigation into the allegation against her uncle was never conducted and her uncle was never punished for the alleged conduct. It does not logically follow that the victim would have motive to lie about sexual abuse because her prior allegation went unacknowledged."). Accordingly, [the victim's mother] would not have been able to testify as to the victim's prior allegations.

As to Defendant 's allegation that [the victim's mother] would have testified to the victim's statement about not growing up with a father, the Court likewise agrees with the State. [The victim's mother] would not have been permitted to testify to such a statement as it would have been inadmissible hearsay. See §§ 90.801, 90.802, Fla. Stat. (2015).

Finally, Defendant concedes in his motion and attached exhibits that his counsel was aware of [K.T.] and [T.E.] as potential witnesses. Thus, Defendant's claim that had counsel investigated [the victim's mother], he would have discovered the identity of these witnesses is without merit. For all of the aforementioned reasons, counsel was not deficient and [Cook] was not prejudiced. Therefore, this claim is denied.

(Doc. 5-2, Ex. 17, pp. 400-02).

The state court's ruling on Cook's ineffective assistance claim involved an application of state evidentiary law. This Court must defer to the state court's determination that under state law, the victim's mother would not have been permitted to testify as Cook suggests. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United

States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance— even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [counsel] objected to the introduction of Callahan's statements based on [state law]— the objection would have been overruled. . . . Therefore, [counsel] was not ineffective for failing to make that objection.").

Cook cannot demonstrate that counsel performed deficiently or that he was prejudiced by counsel's performance because the victim's mother's proposed testimony would not have been allowed. Further, as Cook does not provide an affidavit from the victim's mother that she would have testified as Cook believes, his claim is too speculative to warrant federal habeas relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985))); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of

24

testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."). Cook has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim concerning the victim's mother.

Within Ground Two A, Cook alleges new supporting facts not raised in his postconviction motion in support of his ineffective assistance claim. Specifically, Cook claims that the victim's mother could have testified that the victim said she fabricated the allegations to prevent Cook from moving the family to Texas; that the victim "learned how to do this by watching a Youtube video on the internet"; and that the victim provided a false report on behalf of her friend against a neighbor. (Doc. 1 p. 11).

Because Cook did not raise these factual allegations in his postconviction motion as to this prospective witness (*see* Doc. 5-2, Ex. 14, pp. 203-209),[4] his claim of ineffective assistance is unexhausted to the extent he relies on these facts. A federal habeas petitioner may not bring a particular factual instance of ineffective assistance that he did not present to the state court. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.").

---

[4] The postconviction motion's introductory section contained an unelaborated allegation that the victim fabricated her story after watching a YouTube video (*see* Doc. 5-2, Ex. 14, p. 192) but did not claim that the victim's mother could have testified to such information.

Cook cannot return to state court to raise the unexhausted claim in an untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Notwithstanding the lack of exhaustion and resulting procedural default, Cook is not entitled to federal habeas relief. While Cook's reply cites *Martinez*, his claims are too vague and speculative to demonstrate that his ineffective assistance claim is "substantial." 566 U.S. at 14. As addressed, Cook fails to prove that the prospective witness would have testified as he believes. Accordingly, the claim affords no relief. *See Johnson*, 256 F.3d at 1187; *Buckelew*, 575 F.2d at 521; *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim). Cook is not entitled to relief on Ground Two A.

**B.  Prospective Witness K.T.**

Cook argues that counsel was ineffective in failing to investigate K.T., who would have testified that K.T. and the victim engaged in sexual activity when they were both minors. Cook claims that the sexual activity occurred "during a time period that [the victim] told authorities she wasn't having sex with anyone." (Doc. 1, p. 11). Cook appears to argue that K.T.'s testimony would damage the victim's credibility. The state court denied his claim:

> Defendant claims that his counsel was ineffective for failing to investigate a witness. Specifically, Defendant alleges that [K.T.] would have informed counsel a) that the victim had already been sexually active when he met her in 2011; b) that he and the victim were sexually active with each other and that she was very experienced; c) that the victim

visited her friend, [S.S.], every weekend, where she engaged in sexual activity with [S.S.], and was raped by [S.S.'s] brother; and d) that the victim had lied to law enforcement and the Department of Children and Families (DCF) when she told them that she was not sexually active. He further alleges that he advised his counsel about [K.T.] and that [K.T.] was available for interview. Defendant contends that had counsel investigated [K.T.] and been able to impeach the victim's statements to law enforcement and to DCF, he would not have entered a plea but would have proceeded to trial. The State was directed to respond to this claim.

In its response, the State contends that counsel did in fact investigate potential witness [K.T.]. More specifically, the State indicates that counsel listed [K.T.] on his reciprocal witness list and that counsel even advised the Court in a Motion to Continue that counsel interviewed [K.T.] and was told about the victim admitting to falsely accusing Defendant and "additional information that tends to undermine the credibility of the [victim]." The State further contends that Defendant was aware of his counsel's attempts to get ahold of this witness based on discussions relating the same to the Court during a pretrial hearing held on June 19, 2012. Finally, the State argues that further confirmation that Defendant was aware of his counsel's interview with [K.T.] is contained in the e-mails between [the victim's mother] and Defendant's counsel that he attached to his motion.

The Court agrees with the State and finds that counsel was not deficient. As the State indicates in their response, counsel did in fact interview [K.T.] and made several attempts to depose him and secure his presence at a trial. Therefore, counsel was not deficient because he did not fail to investigate [K.T.]. Defendant fails to meet the deficiency prong of <u>Strickland</u>, and the Court need not address the prejudice prong. See <u>Maxwell</u>, 490 So.2d at 932 (stating that if the defendant fails to satisfy one prong of the analysis, then the inquiry ends, and the court need not determine whether the defendant has satisfied the other prong). This claim is therefore denied.

(Doc. 5-2, Ex. 17, pp. 402-03) (court's record citations omitted).

As the state court noted, counsel interviewed K.T. and attempted later to depose

him and secure his presence for a trial. (Doc. 5-2, Ex. 16, pp. 371-73, 388-96).

Accordingly, Cook fails to show that the state court unreasonably determined that his

counsel was ineffective in not investigating K.T. Because Cook has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, Cook is not entitled to relief on Ground Two B.

### C. Prospective Witness T.E.

Cook claims that counsel should have interviewed T.E. Cook asserts that T.E. would have testified that he overheard the victim and the victim's friend "plotting to fabricate these allegations against Petitioner so that he would not move [the victim] away to Texas." (Doc. 1, p. 11) The state court denied Cook's claim:

> Defendant claims that his counsel was ineffective for failing to investigate a witness. Specifically, Defendant alleges that [T.E.] would have informed counsel that he overheard the victim and [S.S.] discussing falsely accusing Defendant of sexual misconduct because Defendant would not allow the victim to travel to Illinois with [S.S.], and planned to move their family to Texas. Defendant alleges that [T.E.] would have also informed counsel that [S.S.] had previously made false allegations of sexual misconduct against a family member or friend, and that as part of those false allegations, the victim in the present case had given a statement. He further alleges that the victim later admitted to falsifying the statement she made pertaining to [S.S.]'s allegations of sexual misconduct. Defendant states that he advised his counsel about [T.E.], and that [T.E.] was available to testify. He further contends that had counsel investigated [T.E.], he would not have entered a plea but would have proceeded to trial. The State was directed to respond to this claim.

> In its response, the State contends that this claim is refuted by Defendant's plea colloquy and signing of the plea form. The State further contends that it is unreasonable that Defendant would have proceeded to trial based on the potential that this witness' statement would be admitted due to the series of events that would have to take place before this hearsay testimony would be admissible. The State alleges that the letter [T.E. wrote to Cook] itself is inadmissible hearsay. The State further alleges that the testimony itself could not have been elicited by counsel unless the issue was specifically addressed with the victim and she then denied having made such a statement; and that only then could counsel have called [T.E.] to say what he overheard.

28

The Court agrees with the State and further finds this claim to be speculative. The State is correct that the letter itself would not have been admissible because it is double hearsay not falling within any exception. See §§ 90.801 - 90.805, Fla. Stat. (2015). Additionally, [T.E.] indicates in his letter that "I just witnessed on facebook that [the victim] loves [S.S.] and did and [sic] only brought up that rape charge since you weren't going to let her go since she didn't have the grades." Thus, contrary to Defendant's allegation that [T.E.] overheard the victim actually state that she intended to set Defendant up with rape charges, it is apparent from [T.E.]'s letter that he deduced such from doing some online research and his conversations with [the victim's mother]. Therefore, it is extremely speculative that the victim actually made such a statement and even more speculative that such a statement would have been admitted at trial. Pure speculation cannot form the basis for postconviction relief. Johnson v. State, 921 So.2d 490, 503-04 (Fla. 2005); Solorzano v. State, 25 So. 3d 19, 23 (Fla. 2d DCA 2009). For the aforementioned reasons, this claim is denied.

(Doc. 5-2, Ex. 17, pp. 403-04).

Cook does not show that the state court unreasonably rejected his claim. As the state court found, Cook's claim is speculative as T.E. obtained information from the internet and from speaking with persons other than the victim. Speculation cannot form the basis of an ineffective assistance claim. *See Tejada*, 941 F.2d at 1559. Additionally, this Court must defer to the state court's conclusion that the letter upon which Cook relies to deduce T.E.'s prospective testimony would have been excluded as a matter of state evidentiary law. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932.

Cook does not show that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two C.

### D. Prospective Witness S.K.

Cook alleges that counsel was ineffective in not investigating S.K. He claims that S.K. would have testified that she caught the victim engaging in sexual activity with other minors "during the same time period [the victim] told authorities she wasn't have sex with anyone." (Doc. 1, p. 12). Cook appears to argue that such testimony would have damaged the victim's credibility.

The state court denied this claim:

Defendant claims that his counsel was ineffective for failing to investigate a witness. Specifically, Defendant alleges that [S.K.] would have informed counsel that she witnessed the victim engaging in sexually promiscuous activity prior to the time period that the victim claims Defendant sexually assaulted her. Defendant further states that [S.K.]'s testimony could have been used to impeach the victim's statements that she had never before been sexually active until Defendant sexually assaulted her. Defendant alleges that he advised counsel about [S.K.]. Defendant contends that had counsel investigated [S.K.], he would have been able to impeach her statements to law enforcement and DCF that she had not before been sexually active until she was sexually assaulted by Defendant. He further contends that had counsel not been deficient in this respect, he would not have entered a plea, but would have proceeded to trial. The State was directed to respond to his claim.

In its response, the State contends that Defendant was not prejudiced by the absence of this witness because her "testimony proves nothing" and would have only been used to attack the victim's sexual history, which is not permissible. Additionally, the State appears to contend that the victim [sic] would not have proceeded to trial if counsel had interviewed [S.K.], and had [S.K.] been permitted to testify that she found the victim in "sexually promiscuous situations" when the victim was an "adolescent age," because this testimony does not contradict the victim's statements to investigators that she was not sexually active prior to Defendant molesting her. More specifically, the State argues that the victim made a statement to Investigator Fowler that Defendant had been molesting her since she was seven years old, an age undeniably pre-adolescent. Thus, the State argues that whatever [S.K.] allegedly saw, it would have been

30

at a time after Defendant began molesting the victim, and therefore consistent with the victim's statements to investigators.

The Court agrees with the State that testimony by [S.K.] that she witnessed the victim engage in sexually promiscuous activity with individuals other than Defendant would not have been admissible. See § 794.022, Fla. Stat. (2015). The Court further agrees with the State that [S.K.]'s potential testimony that she found the victim in "sexually promiscuous situations" when the victim was an "adolescent age" does not contradict the victim's statements to investigators that she had not been sexually active until Defendant began molesting her. Therefore, the Court finds that Defendant would not have proceeded to trial had counsel investigated [S.K.]. Accordingly, this claim is denied.

(Doc. 5-2 Ex. 17, pp. 404-05).

Again, this Court must defer to the State court's ruling that S.K.'s proposed testimony would have been inadmissible under Florida law. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932. Thus, Cook cannot show prejudice from counsel's failure to interview S.K. Further, without evidence of what S.K. would have testified to, Cook's claim is too speculative to warrant federal habeas relief. *See Johnson*, 256 F.3d at 1187; *Buckelew*, 575 F.2d at 521.

As Cook does not show that the state court's rejection of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Two D.

### E. Cook's Allegation That Counsel Would Admit To Ineffective Assistance

Cook alleges, as an overarching argument within Ground Two, that counsel conceded to Cook he had not investigated the witnesses but said that he would admit to having been ineffective during postconviction proceedings. Cook did not exhaust

any independent claim of ineffective assistance in state court. He made this allegation only as part of his introduction, not as an enumerated claim for relief. (Doc. 5-2, Ex. 14).[5] As Cook cannot return to state court to raise this ineffective assistance claim, it is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Cook does not demonstrate that the fundamental miscarriage of justice exception applies to excuse the default.

To the extent Cook intends to argue that the cause and prejudice exception applies under *Martinez*, he is not entitled to relief. As an initial matter, this claim is waived by the entry of Cook's plea, as Cook makes no allegation that counsel's alleged ineffectiveness affected the voluntary nature of the plea. *See Tollett*, 411 U.S. at 267. Additionally, to the extent Cook's argument encompasses an allegation that counsel induced him to enter the plea by assuring him would prevail in postconviction proceedings, it is refuted by the record of the change of plea hearing, where Cook told the court that no one had promised him anything in order to get him to enter the plea. (Doc. 5-2, Ex. 11, pp. 354-55). Further, for the reasons addressed above, Cook fails to show that counsel was ineffective under *Strickland* for not interviewing and investigate the prospective witnesses. Cook does not show that an exception applies to overcome the procedural default. He is not entitled to relief on Ground Two E.

## IV.   Ground Three

---

[5] Even assuming that Cook's postconviction motion was sufficient to exhaust the claim and even assuming that the state court failed to address it, thereby entitling Cook to *de novo* review, Cook does not show entitlement to relief under *Strickland* for the reasons addressed within the order.

Cook argues that trial counsel was ineffective in failing to review discovery and file a motion to dismiss the two charged counts of capital sexual battery based upon interviews by the victim in which she stated that she was over the age of 12 years when the offenses occurred.[6] Cook contends that while the victim initially told police that offenses occurred before she turned 12 years old, she subsequently told the Child Protection Team that the offenses did not begin until she was 13 years old. Thus, Cook contends, counsel should have file a motion to dismiss the capital sexual battery counts because "the State lacked competent substantial evidence to legally pursue the prosecution of these particular offenses in light of the discrepancy in the age" of the victim "when she alleged Petitioner began" committing the offenses. (Doc. 1, p. 17).

Cook does not argue with specificity that counsel's failure to move to dismiss the capital sexual battery charges affected the knowing and voluntary nature of his plea. The Court therefore finds that the claim raised in Ground Three is waived by the entry of Cook's plea. *See Tollett*, 411 U.S. at 267. Alternatively, even assuming that the claim is not waived, Cook does not show entitlement to relief.

In denying Cook's ineffective assistance claim, the state court found:

> Defendant claims that his counsel was ineffective for failing to review the discovery provided to him by the State. Defendant contends that had counsel reviewed the State's discovery, counsel would have learned that the alleged offenses occurred when the victim was fourteen years old and older. Thus, Defendant contends that the charges based on the victim being under the age of twelve should have been dismissed. The Court notes that only counts and six were based on the victim being under the age of twelve. The State was directed to respond to this claim.

---

[6] Sexual battery is a capital level offense when the victim is less than 12 years old and the perpetrator is 18 years or older. § 794.011(2)(a), Fla. Stat.

In its response, the State contends that this claim would have been appropriate for a motion to dismiss, a defense mechanism that Defendant abandoned when he entered his plea. Furthermore, the State argues that Defendant is incorrect. The State asserts that the victim was born [in] August . . . 1996. The State further asserts that the victim reported sexual contact between herself and Defendant starting in either 2006 or 2007. Thus, the State claims that any sexual acts which occurred prior to August . . . 2008 were correctly charged as capital sexual battery. Accordingly, the State contends that a motion to dismiss would have been meritless and counsel cannot be deemed deficient for failing to file a meritless motion.

Again, the Court agrees with the State that Defendant's claim is without merit. Counts one and six were the only charges based on the victim being under the age of twelve. Counts one and six alleged that Defendant committed sexual battery against the victim on or between June 1, 2007 and August . . . 2008. The victim's date of birth is [in] August . . . 1996. Attached to Defendant's motion, marked as Exhibit C, is the case report taken by Officer Brian Fey. However, Defendant left out page four of the report where Officer Fey notes that the victim reported sexual contact between herself and Defendant in Pinellas County starting in either 2006 or 2007; the State attached the full report to its response. That would make the victim ten-to-eleven years of age in years 2006 and 2007. Thus, counsel was not ineffective for failing to review the discovery, because the discovery would have revealed that several of the charged offenses occurred when the victim was under the age of twelve. Furthermore, counsel was not ineffective for failing to file a meritless motion to dismiss. See Ferrell v. State, 29 So.3d 959, 976 (Fla. 2010) (stating that counsel "cannot be deemed ineffective for failing to raise a meritless argument."). For the aforementioned reasons, this claim is denied.

(Doc. 5-2, Ex. 17, pp. 405-06) (court's record citations omitted).

The record supports the state court's conclusion. As the state court noted, Officer Fey's report indicates that the victim stated sexual activity began before she was 12 years old. (Doc. 5-2, Ex. 16, pp. 377-81). Therefore, evidence available to the State supported the charges as filed. Further, the requirements for filing a charging document are established as a matter of Florida law. See Fla. R. Crim. P. 3.140. To the

34

extent the resolution of this claim turns on an application of Florida law concerning the proper manner of bringing criminal charges, this Court must defer to the state court's interpretation of state law. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932.

Similarly, to the extent the resolution of this claim turns on whether a motion to dismiss on the basis Cook proposes would have been successful, the Court must defer to the state court's finding that a motion to dismiss would have been meritless. As explained by the state court and addressed above, the State possessed evidence that the victim was under the age of 12 years when some of the offenses occurred. Even if the victim made inconsistent statements about her age, such statements did not form a basis for a motion to dismiss. Under Florida Rule of Criminal Procedure 3.190(c)(4), a defendant may file a motion to dismiss an information or indictment on grounds that "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant."

In reviewing a Rule 3.190(c)(4) motion to dismiss, a trial court may not make factual determinations, weigh conflicting evidence, or consider the credibility of witnesses. *State v. Ortiz*, 766 So.2d 1137, 1142 (2000). Denial of a motion to dismiss is required if a material fact is in dispute. *State v. Kalogeropolous*, 758 So.2d 110, 112 (Fla. 2000). To defeat a motion to dismiss, the State "need only specifically dispute a material fact alleged by the defendant or add additional material facts that meet the minimal requirement of a prima facie case." *Id*. Further, on a motion to dismiss, the

35

State is "entitled to the most favorable construction of the evidence with all inferences being resolved against the defendant." *Ortiz*, 766 So.2d at 1142.

Cook's claim that counsel was ineffective for failing to review the discovery because it would have shown inconsistencies in the factual bases for the charges of capital sexual battery, thereby providing a basis for a motion to dismiss, does not entitle him to federal habeas relief. Cook fails to show that the state court's resolution of the claim involved an unreasonable determination of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Three.

## V.    Ground Four

Cook asserts that trial counsel was ineffective because counsel "misadvised, made promises, and conveyed the State's threats during conveying of the State's plea offer." (Doc. 1, p. 18). Cook asserts that, a few days before he entered the plea, counsel told him that the court would not be bound by the agreed upon 25-year sentence and would likely impose a more lenient sentence after reviewing his pre-sentence investigation ("PSI") report. The state court denied Cook's claim:

> Defendant . . . claims that his counsel was ineffective for advising him that the court would consider a PSI report and then failing to object to the court's failure to receive and consider a PSI report. He alleges that he entered his plea because counsel misadvised him that the sentencing court would have before it a PSI report, reflecting his extensive military career and demonstrating that he is an upstanding citizen. He further alleges that had his counsel not misadvised him that with the PSI report the court could sentence him to a lesser punishment than that agreed upon with the State, he would not have entered the plea but would have proceeded to trial. The State was directed to respond to this claim.
>
> In its response, the State contends that Defendant entered into an agreed upon disposition with State to twenty-five years in prison. Thus, the State

36

contends that it is illogical for Defendant to have believed that he could get any other sentence than that to which he agreed. Additionally, the State argues that Defendant specifically waived a PSI by signing the plea form and then failed to notify the Court of his counsel's alleged promise. Finally, the State alleges that Florida Rule of Criminal Procedure 3.710(a) [which Cook cited in support of his contention] is titled "Cases in Which the Court Has Discretion." Thus, the State contends that Rule 3.170(a) does not apply in Defendant's case because the Court had no discretion in sentencing Defendant due to his entering a negotiated plea.

The Court agrees with the State that Defendant suffered no prejudice due to counsel's actions. "The right to a PSI is not a fundamental, constitutional right, nor does it go to the heart of the adjudicatory process. It is a statutory right involving sentencing." Ortiz v. State, 9 So.3d 774, 776 (Fla. 4th DCA 2009). While Rule 3.170 states that a PSI is mandatory for adult first time offenders and for felony offenders under the age of 18, this mandatory requirement does not apply when probation is not an available sentence. Comparato v. State, 419 So.2d 1131 (Fla. 1st DCA 1982) ("Where probation is not a viable alternative, the mandatory provision of the aforequoted rule is not applicable.") (citing Hargrove v. State, 366 So.2d 1 (Fla. 1978)); Brunson v. State, 369 So.2d 945, 947 (Fla. 1979) ("A presentence investigation is only required when probation is an alternative sentence available to the trial judge. In other situations the presentence investigation is a useful but optional tool which may be used at the trial court's discretion.").

In Defendant's case, probation was not an available sentence. As noted above, Defendant was convicted of six first degree felonies. Defendant's scoresheet reflected a lowest permissible sentence of 547.5 months in prison. Consequently, probation was not a viable option and a presentence investigation was not mandatory.

Furthermore, Defendant specifically waived his right to a PSI by entering into a negotiated plea with the State and by signing the plea form memorializing the same. In order for the Court to impose the agreed-upon disposition pursuant to Defendant's plea agreement to the specified sentence, a PSI had to be waived. Moreover, Defendant was aware that he was not getting a PSI at the time he entered his plea. During the court's plea colloquy with Defendant, the court specifically discussed with Defendant that based on his negotiated plea agreement with the State, he would be receiving a sentence of twenty-five years in prison. Defendant cannot now claim that counsel was deficient or that he suffered any prejudice from his counsel misadvising him that he was entitled to a PSI

when he was aware at the time that he entered his plea that he was not getting a PSI.

Finally, the Court finds that Defendant would not have proceeded to trial. In determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, such as the colloquy at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence defendant faced at trial. See Grosvenor, 874 So. 2d at 1181-82. In light of the fact that Defendant received twenty-five years in prison when he faced a maximum of life in prison with a minimum-mandatory term of twenty-five years, that his answers during the plea colloquy evidence that he had thoroughly discussed the plea with his counsel including all of the rights he was giving up by entering his plea, as well as the fact that Defendant confessed to the charges to law enforcement, the Court finds that Defendant would not have proceeded to trial.

(Doc. 5-2, Ex. 17, pp. 410-11) (court's record citations omitted).

The record supports the state court's conclusion. Cook was aware that he would in fact receive the agreed-upon sentence for 25 years in prison, and that this sentence was determined when he "worked out [a] deal with the State." (Doc. 5-2, Ex. 11, pp. 351-52). There is no indication from the record that the agreement contemplated a potential change to the sentence depending on the contents of a PSI. Accordingly, Cook fails to show that state court unreasonably determined that counsel's performance was not deficient. Nor does Cook show that the state court unreasonably concluded that he failed to show a reasonable probability he would have insisted on going to trial if not for counsel's performance given the strength of the State's evidence and the fact that he faced a life sentence upon conviction as charged. Accordingly, Cook fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this aspect of his claim.

38

Within Ground Four, Cook raises two unexhausted claims. As Cook cannot return to state court to raise these ineffective assistance claims in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), they are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Cook does not establish applicability of the fundamental miscarriage of justice exception. However, Cook appears to argue that he has shown applicability of the cause and prejudice exception under *Martinez*. However, Cook has not shown that his claims are "substantial."

First, Cook contends that counsel promised Cook he "wouldn't be stuck with whatever sentence he ultimately received from the trial court" because counsel would agree to admit during postconviction proceedings that counsel had been ineffective. (Doc. 1, p. 19). This claim is refuted by the record at the change of plea hearing, where Cook told the court he understood that he was entering to a negotiated plea deal with the State for a 25-year sentence and that no one promised him anything to get him to enter the plea. (Doc. 5-2, Ex. 11, pp. 351-52, 354-55). Cook faces a heavy burden to show that his statements at the change of plea hearing were not true. *Blackledge*, 431 U.S. at 73-74; *Medlock*, 12 F.3d at 187. Cook has not made that showing. Additionally, for the same reasons addressed by the state court, Cook fails to show a reasonable probability that he would have insisted on proceeding to trial, where he would have faced an overall life sentence if convicted as charged, if not for counsel's alleged ineffective assistance. The Court finds that Cook fails to show that this claim is "substantial" under *Martinez*. As Cook fails to overcome the procedural default, the claim is barred from federal habeas review.

Second, Cook contends that counsel told him in an "off-the-record discussion" that if he proceeded to trial, the prosecutor said the State would pursue criminal charges against the victim's mother and that the victim's mother would lose custody of her daughters (one of whom is also Cook's biological daughter). Cook claims that "he had no choice in the matter and did not want his girlfriend and daughter, especially, to have to suffer, so he accepted the offer." (Doc. 1, p. 19).

Cook fails to explain how counsel was ineffective in conveying this information. Cook contends that his acceptance of the plea "was only procured through counsel's . . . conveyed threats." (*Id.*, p. 20). Cook fails to show that his counsel threatened him; his version of events only alleges that counsel relayed a communication from the State.[7] Moreover, as stated above, the record shows that Cook's plea was voluntary, and he told the state court that no one threatened him to induce his plea. (Doc. 5-2, Ex. 11, pp. 354-55). As Cook does not establish that his statements at the change of plea hearing were false, the record refutes this claim. In addition, for the same reasons addressed in the state court's order and as discussed above, Cook fails to show a reasonable probability that he would have insisted on going to trial absent counsel's alleged deficient performance. Therefore, Cook does not show that his unexhausted

---

[7] To the extent Cook intends to allege that the prosecutor improperly threatened or coerced him in violation of his federal rights, Cook cannot obtain relief. Such a claim is unexhausted because Cook did not present it to the state court (*see* Doc. 5-2, Ex. 14) and is now procedurally defaulted. Cook does not demonstrate that an exception applies to overcome the default. *Martinez* applies only to defaulted claims of ineffective assistance of trial counsel. *See* 566 U.S. at 9, 16-17. In addition, any such claim would be refuted by Cook's statements at the change of plea hearing that no one had threatened him into entering the plea.

claim is substantial under *Martinez*. The cause and prejudice exception therefore does not apply to excuse the procedural default.  Cook is not entitled to relief on Ground Four.

## VI.    Ground Five

Cook claims that trial counsel was ineffective in failing to advise him of all consequences of accepting the State's plea offer. He contends that counsel failed to inform him that he would not be able to have contact with the victim's mother and his biological daughter (who is the victim's half-sister), because such contact "would equate to indirect contact with the victim of his case which was unlawful." (Doc. 1, p. 22). The state court rejected Cook's claim that counsel was ineffective for not advising him of consequences of entering the plea:

> Defendant claims that his counsel was ineffective for not explaining some of the collateral consequences of the plea. Specifically, he contends that his counsel never informed him that as a consequence of his plea, the court would impose a no contact order with the victim and the victim's mother. He further contends that counsel failed to inform him that he would lose his parental rights to his biological daughter as a consequence of his plea. Defendant claims that had counsel advised him of these consequences, he would not have entered a plea but would have proceeded to trial. The State was directed to respond to this claim.

> In its response, the State contends that at the time of his plea, the Court ordered that there would be no contact with the victim, directly or indirectly, and so Defendant was aware that he would be unable to call any number associated with the victim or mail anything to an address associated with the victim. The State argues that, therefore, logically, Defendant should have known that because the victim is a minor child, Defendant could not contact her mother because they share a phone number and address. Additionally, the State contends that counsel had no obligation to inform Defendant of the potential to lose his parental rights, as that is a collateral consequence of the plea.

The Court finds that Defendant failed to establish that counsel was ineffective under <u>Strickland</u>. Before entering his plea, in the presence of Defendant, the State announced the consequences of Defendant's plea, including that Defendant have no contact with the victim. The court then asked counsel if he understood the statements just made by the State to be the plea deal and whether he had discussed that information with Defendant, to which counsel affirmatively agreed. Thereafter, the court conducted its plea colloquy with Defendant; and, notably, Defendant failed to object when the court ordered no contact with the victim. Therefore, the Court finds that Defendant was aware that a no contact order was a consequence of his plea and Defendant consequently suffered no prejudice.

Additionally, the Court finds that the termination of Defendant's parental rights was a collateral consequence of his plea, of which counsel was not required to inform Defendant. In determining whether a consequence of a plea is collateral or direct, the Supreme Court of Florida has stated that neither the seriousness of the sanction nor its burden on the defendant affects the inquiry. <u>Bolware v. State</u>, 995 So.2d 268, 274 (Fla. 2008). If the consequence has "a definite, immediate and largely automatic effect on the range of the defendant's punishment," then it is direct. <u>Id.</u> (internal citations omitted). However, if the consequence does not affect the range of punishment, it is collateral to the plea. <u>Id.</u> Because the termination of Defendant's parental rights does not affect the range of punishment in a definite, immediate and largely automatic way, the Court finds that it is a collateral consequence. Counsel is not required to advised a defendant about potential collateral consequences of pleading guilty. <u>See</u> <u>Watrous v. State</u>, 739 So.2d 6, 8 (Fla. 2d DCA 2001) ("counsel [is] generally only required to advise a defendant of the direct consequences of a plea and not the collateral consequences."). Therefore, the Court concludes that counsel was not deficient for failing to advise Defendant of this potential consequence. For all of the aforementioned reasons, Ground Eight is denied.

(Doc. 5-2, Ex. 17, pp. 411-13) (court's record citations omitted).

The record shows that Cook knew he could not have contact with the victim at the time he entered his plea. The prosecutor stated this condition when announcing the terms of the plea agreement, and the Court repeated it when imposing sentence. (Doc. 5-2, Ex. 11, pp. 349, 358). Therefore, the state court did not unreasonably reject

Cook's claim to the extent he argued that counsel failed to inform him of the order prohibiting direct contact with the victim.

Nor does Cook show that the state court unreasonably determined counsel was not ineffective for allegedly failing to advise Cook that his parental rights would be terminated with respect to his biological daughter. To prevail, Cook must show that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Clearly established federal law encompasses holdings of the United States Supreme Court in effect at the time of the relevant state court decision. *Williams*, 529 U.S. at 412. Cook does not cite any Supreme Court precedent holding that counsel performs deficiently when counsel fails to inform a client about the collateral consequences of a plea.

The Supreme Court addressed the question of whether failure to advise of collateral consequences amounts to ineffective assistance in *Padilla v. Kentucky*, 559 U.S. 356 (2010). *Padilla* involved counsel's failure to inform a client of the deportation consequences of entering a plea. The Supreme Court concluded that, considering the unique nature of deportation, it would not decide the broader question of whether failure to advise of a collateral consequence is deficient:

> The Supreme Court of Kentucky rejected Padilla's ineffectiveness claim on the ground that the advice he sought about the risk of deportation concerned only collateral matters, *i.e.*, those matters not within the sentencing authority of the state trial court. In its view, collateral consequences are outside the scope of representation required by the Sixth Amendment, and, therefore, the failure of defense counsel to advise the defendant of possible deportation consequences is not cognizable as a claim for ineffective assistance of counsel. The Kentucky high court is far from alone in this view.

> We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally reasonably professional assistance required under *Strickland*. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation.

*Id.* at 365 (internal quotation marks, citation, and footnote omitted).

Thus, *Padilla* did not hold that the failure to advise a criminal defendant of a plea's collateral consequences amounts to deficient performance. *See also Sims v. United States*, 785 F. App'x 632, 634 (11th Cir. 2019) ("An attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation." (citing *Chaidez v. United States*, 568 U.S. 342, 356 (2013))).[8]

The termination of Cook's parental rights was a collateral consequence of his plea. A direct consequence is one that has a definite, immediate, and largely automatic effect on the range of a defendant's punishment; a collateral consequence does not share these characteristics. *See, e.g.*, *United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir. 2000) (stating that if a consequence is contingent upon action by an individual other than the sentencing court, such as another governmental agency or the defendant himself, the consequence is generally "collateral."). Florida law provides that termination of parental rights is a collateral, not direct, consequence of entering a plea.

---

[8] An attorney's affirmative misadvice about collateral consequences may, in some cases, constitute deficient performance. *Sims*, 785 F. App'x at 634-35 (citing *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 (11th Cir. 1985)). Cook does not allege that counsel gave him affirmative misadvice with respect to the matters raised in Ground Five. He only argues that counsel failed to advise him of all collateral consequences of the plea. (Doc. 1, pp. 21-23).

*See Slater v. State*, 880 So.2d 802 (Fla. 5th DCA 2004) (stating that termination of parental rights was a collateral consequence of entering a plea because it is not a direct or immediate consequence of a plea); *see also* § 39.801, Fla. Stat. and Fla. R. Juv. Proc. 8.500-8.535 (outlining the procedures for termination of parental rights). Cook has not established that the state court's denial of his ineffective assistance claim was contrary to or involved an unreasonable application of clearly established federal law. Nor has he demonstrated that it was based on an unreasonable factual determination.

Finally, Cook contends that counsel was ineffective for not informing him that after he entered the plea, he would not be permitted to have contact with the victim's mother and his biological daughter because such contact would be considered indirect contact with the victim. The state court did not expressly address this part of Cook's claim in denying relief. Nevertheless, the state court is presumed to have adjudicated the claim on the merits. *See Johnson v. Williams*, 568 U.S. 289 (2013) (explaining that generally when a state court addresses some claims raised by a defendant, but not a claim that is later raised in a federal habeas proceeding, the federal habeas court presumes that the state court denied the claim on the merits).[9]

An inability to contact the victim's mother and Cook's daughter is a collateral, rather than direct, consequence of Cook's guilty plea. Accordingly, Cook cannot show

---

[9] The presumption is rebuttable, and *de novo* review of such a claim is appropriate when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court[.]" *Williams*, 586 U.S. at 303. Even if the state court overlooked the claim, thereby warranting *de novo* review in this § 2254 proceeding, Cook is not entitled to relief for the same reasons addressed in this order.

that counsel performed deficiently under *Strickland* even if counsel failed to tell him about such a consequence. Nor does Cook demonstrate a reasonable probability that he would have insisted on going to trial—where the State could have proceeded with significant evidence against him including his incriminating statements, and where he would have faced a life sentence if convicted as charged—if not for counsel's alleged failure to inform him of the potential inability to contact the victim's mother and his daughter. Consequently, Cook is not entitled to relief on Ground Five.

Accordingly, the Court **ORDERS** that:

1. Cook's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter a judgment against Cook and to **CLOSE** this case.

3. Cook is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must issue a COA. *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Cook must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Cook has not made the requisite showing. Finally, because Cook is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on December 1, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Royce W. Cook
Counsel of Record